CHARLES  H.  POTTER,  APPELLEE,  V.  MADS  SORENSEN,
APPELLANT.

FILED SEPTEMBER 26, 1914.  No. 17,805.

1. **Appeal in Equity:** CONFLICTING EVIDENCE: FINDINGS. This cause
in equity was submitted to the district court on the oral testimony
of all the witnesses. The testimony was squarely conflicting on ev-
ery material element in the case. The evidence given by one side or
the other was necessarily untrue. The trial court had the opportunity
to observe the demeanor, conduct and apparent truthfulness of the
testimony of each witness. In such case, while the findings and de-
cree of the district court are not binding upon this court, yet such
findings are proper subjects for consideration by the appellate court.

2. **Contract:** REFORMATION. The evidence is examined, and no reversi-
ble error is found.

APPEAL from the district court for Valley county:
JAMES N. PAUL, JUDGE. *Affirmed.*

*Claude A. Davis,* for appellant.

*E. P. Clements, contra.*

REESE, C. J.

This is an action to reform a written contract for the
sale of real estate, and to decree its specific performance
as reformed. The decree was in favor of plaintiff, and
defendant appeals.

We find that the case was submitted to the district
court upon the most direct and positive conflicting evi-
dence upon all the material issues in the case. It is al-
leged in the petition that on the 13th day of January,
1911, plaintiff was the owner of the real estate in question,
and which is described therein (but as it is a very irregu-
lar tract, and can only be described by the statement of
many courses and distances, we do not deem it necessary
to set out the description here). The land is situated
south of and immediately adjoining the town plat of the
city of Ord in Valley county. It is a long, irregular and

in part a narrow strip, tapering to a point at the south end; the north end of greater width abutting on the plat of the city of Ord. It is further alleged that on the date named plaintiff and defendant entered into an oral contract by which plaintiff agreed to sell and defendant to purchase the land for the sum of $3,150, of which $1,000 was paid, the remaining $2,150 to be paid upon the 1st day of April of the same year; that defendant presented to plaintiff a written contract for his signature, but which plaintiff was unable to read, owing to defective eyesight, defendant stating to plaintiff that it was in accordance with their agreement, and plaintiff signed it, relying on defendant's representations, and believing that it was so written; that the instrument was retained by defendant, and permission for plaintiff to see it refused, but plaintiff is informed that it does not correctly and truly state the contract, and that defendant either misread it to him with fraudulent intent, or has fraudulently changed it since it was signed, for the purpose of obtaining the land for a less price than agreed upon; that plaintiff tendered to defendant a deed and demanded payment of the remainder of the alleged purchase price, but defendant refused to comply with the demand; that about said 1st day of April defendant took possession of said land and holds the same. Prayer for reformation of the written agreement to correspond with the contract as made, and for its enforcement as reformed.

Defendant answered, setting up the written agreement as made; alleging that it truly stated the contract between him and plaintiff, its signing and acknowledging by both plaintiff and his wife; alleging in a very extended answer that the agreement was fully understood by plaintiff and his wife; denying all fraud, misrepresentation or change in the written agreement; alleging that the oral contract between him and plaintiff was correctly stated in the written agreement; and denying generally all allegations of the petition, except that of the purchase and possession of the land. The tender of the purchase price according to the written agreement and its refusal by plaintiff are also

alleged. The prayer is: (1) For the dismissal of plaintiff's petition; (2) or that the court order plaintiff and wife (the wife being made a party at defendant's request) to execute and deliver to him a warranty deed conveying the full title to the land, upon the payment of the sum of $105 an acre therefor for such number of acres as the tract contains; and (3) for general equitable relief.

Plaintiff replied, denying the correctness of the description of the land stated in defendant's answer, and giving what he claims is a true description, followed by a general denial of all other averments of the answer, which do not admit the allegations of the petition.

The contract as set out in defendant's answer is in writing and in the form of a warranty deed, although not complete in the description of the land. The principal contention is as to the statement of the consideration, or price to be paid for the land. It is stated as follows: "For and in consideration of the sum of one hundred five no/100 ($105) dollars per acre"—and near the close is the acknowledgment of the receipt of $1,000 in part payment; balance of purchase price to be paid on or before April 1, 1911. It was signed by plaintiff, and the next day defendant procured the county judge, and they, accompanied by Rudolph Sorensen, went into the country some seven miles to where Mrs. Potter was teaching school, procured her signature and acknowledgment, and upon their return to Ord the acknowledgment of plaintiff was taken by the county judge. It is claimed by plaintiff, and so testified to by him, that the contract price agreed upon was $3,300 in gross; that he refused to sell by the acre and never agreed thereto; that, if the clause as to the price was in writing when he signed it, it was misread to him by defendant. Mrs. Potter testified that, when the instrument was presented to her at the schoolhouse, she read the whole carefully, and neither this clause nor the one referring to the advance payment of $1,000 was therein, while defendant testified as positively that both were there, having been written there in the presence of plaintiff before it was signed by him. Judge Gudmundsen, the county judge, was

present at the time the instrument was signed by Mrs. Potter, but, unfortunately, he did not read the contract nor give any attention to its contents. About all he could testify to was that on the way out to the schoolhouse defendant told him he was paying $3,150 for the land. Lars Sorensen, a relative of defendant, testified that he saw the contract the same evening after defendant came from plaintiff's house, that he "read the price through," and it was stated as it is now. Rudloph Sorensen, a brother of defendant, testified to substantially the same, as to having seen the instrument that night with the words there as now. He also sustains the testimony of Judge Gudmundsen, which is practically admitted by defendant, as to the statement by defendant that he bought the land at about the price of $3,150, and that nothing was then said about the measurements of the land, and that before Mrs. Potter signed the instrument she sat down and read it. It fully appears that Thomas Sorensen, the uncle of defendant, was present at the home of Mr. Potter at the time the contract of purchase was made, and signed the contract as a witness, but for some unexplained reason his testimony was not taken. Plaintiff seems to have had the impression that there was "close to" or about 30 acres in the tract, but said he had bought it in gross, had never had it surveyed, and insisted upon selling it in the same way; that he had it listed with agents for sale at $3,300, and would take no less, except that he allowed defendant the usual commission, which amounted to $150, leaving the price to defendant at $3,150. It is conceded that the $1,000 was not paid until the next day. If the statement as to its receipt was in the contract when written, it was written there the night before the payment was made. At the time the sale was made, there was snow on the ground and it was very cold. It seems that by a subsequent survey it was found that the tract consisted of a little over 15 acres. There was no homestead right in the land. We find no evidence as to its value in the bill of exceptions. Defendant was dealing in lands, both on his own behalf and as agent for others. It was shown by his testimony

that he had acquired a knowledge of the rules of law governing the sales of real estate. He had not paid the $1,000 advance payment. If he considered that he was paying a reasonable price for the land, we are at a loss to understand why he was so anxious to obtain the signature of Mrs. Potter to the contract as to procure a handcar and transport the county judge through the cold to the schoolhouse for the purpose of securing it. All the evidence submitted to the court was by oral testimony in open court. The learned trial judge had the opportunity to observe the demeanor, conduct and apparent candor of each witness. We have frequently held, and it is no longer necessary to cite cases, that in such case of conflicting evidence the decision of the district court, while not binding upon the conscience of this court, will be considered where the court has knowledge of the witnesses and observes them in giving their testimony. If we give any consideration whatever to the findings and decree in this case, an affirmance of the judgment must follow.

We have considered the contention of defendant, as well as his many cases cited in favor of the proposition, that where land is sold by the tract or in gross, if the measurement shows an error of much magnitude in the quantity of land, the courts will apply a remedy and make the loser whole. But where the difference in quantity is slight, under a conveyance containing the words "more or less" or of similar import, the courts will not interfere, nor apply any remedy. This is no doubt the law, but we cannot see that it has any application to this case. The issues are: Did plaintiff make the contract set up in the writing? Was it changed after he signed it? Was he made aware of its contents, as claimed by defendant, when he signed it? In other words: What was the real contract? The court having found that the contract was as claimed by plaintiff, there was nothing to do but correct it and enforce it. Had plaintiff sought a rescission of the contract and the return of his $1,000 paid, an entirely different question might have been presented.

As the case is presented to this court, the decree of the district court must be and is

AFFIRMED.